May it please the court. This is an insurance coverage dispute, your honors. Stay your name for the record because it's being recorded. This is Phil Niselak representing Pioneer Exploration Company. This is an insurance coverage dispute in which my client seeks reversal of a district court judgment denying coverage for certain pollution liability costs and plugging and abandoning costs resulting from- Can I ask you a plugging question before we get going? I'm sorry? Can I ask you a question about plugging the well? Was it plugged because it was out of control or was it going to always be plugged at some point? Well, obviously any well that's drilled in Louisiana, there's an obligation to plug and abandon that well. But this well was plugged because this well became out of control. The well couldn't be re-drilled, it couldn't be produced after the blowout, it was badly damaged in the blowout and it needed to be plugged and abandoned.  Yeah, it was destroyed. And so the costs incurred were way in excess of what would have been normally incurred in the plugging and abandoning. But eventually it would have had to have been plugged. Eventually it would have had to have been plugged, that's correct. But it was plugged at this time because of an order from the DNR to make sure that the well was plugged. So it was plugged prematurely and at greater cost than it would have been had the well continued to produce and had not blown out. Why greater cost? It was plugged because of the property damage that was caused by the blowout and to prevent further blowouts. So why did it cost more? Well, it cost more because the well was so badly damaged, Your Honor. When a well blows out, there are some significant problems that often occur with the well bore, with the casing, with other aspects and so forth. So it was in connection with the blowout because of the timing? It was in connection with the blowout because of the timing of the blowout. And it occurred because of the blowout, but it was also ordered to be plugged and abandoned because of the property damage that had occurred as a result of the blowout. Hence, triggering the insuring conditions of the policy at issue, which is an umbrella policy. And it's very significant here, Your Honors, that this is an umbrella policy that's at issue here. Because an umbrella policy, as contrasted with an excess policy, provides coverage to the policy holders, such as Pioneer, for risks and liabilities not covered under underlying insurance. And in this case, particularly with regard to the pollution liability costs at issue, that's very important. Because the underlying policies, in this case a CGL policy and an excess policy provided by Steadfast, precluded coverage, expressly precluded coverage for pollution liabilities arising out of a well out of control. And so the umbrella liability policy, which our client purchased with the intent of getting coverage for just such those costs, did not have that exclusion in it. It provided fairly broad pollution liability coverage pursuant to what was called in the policy a blended pollution endorsement. That blended pollution endorsement provided coverage that was not provided in the other policies. And it provided it pursuant to what was essentially a policy within a policy. The blended pollution endorsement had its own insuring conditions, it had its own conditions, it had its own exclusions. But it did not have an exclusion for pollution liability for a well out of control. Now, what it did have, and let me back up a second. When you look at that policy, before it's triggered, my client, Pioneer, has got to have a lot of skin in the game when there's a loss under that policy. You have to pay a significant premium, over $100,000. The policy contains an other insurance clause, which is an excess other insurance clause, which means it's only triggered after all other available insurance, including in this case, well control insurance, is exhausted. And then on top of that, my client has to pay $1 million self-insured retention before coverage is triggered. So the client has to have a lot of skin in this game. Now, once the Moak claim well blew out, all those conditions were ultimately met. The premium had been paid, the well control policy was exhausted with payments for control of well costs. My client paid $1 million in costs for pollution remediation on the lease, and then made claim against Steadfast. And Steadfast denied coverage under the umbrella portion of the policy, not because there's a well out of control endorsement, but trying to fit the square peg of an owned, rented, and occupied exclusion into this big round hole of coverage that they had created in the blended pollution endorsement. Why were they wrong? Well, they're wrong because with respect to Louisiana Mineral Law, my client neither owned the surface estate property that was damaged outside of, well, didn't own it at all. Didn't occupy it from the standpoint of occupying the lease. In the surface. Didn't occupy the surface estate, that's correct, Your Honor, other than the one half square acre well pad where they were doing their operations. And didn't rent the surface estate either. While certainly rentals are paid under a Louisiana mineral lease, they are not paid for total occupation or total direct primary control of the surface estate. When you pay rentals in the form of royalty or in the form of delay rentals, what you are paying as a lessee is the right to reasonably use that part of the surface estate necessary for your operations. You're not allowed to go beyond, you're not allowed to do things on the other parts of the surface estate if they are not necessary. The history of this case shows that my client operated and occupied on the surface lease only two one half square acres of a 285 acre lease. And so to the extent the occupied portion of the exclusion would apply, it only applies to those half acre sites. We didn't own it to the extent that the rented portion of the exclusion would apply. We only rented that part of the surface estate reasonably necessary for our operations. The same half acre sites that we talked about. But more of the area was damaged by the- That's exactly the point here, Your Honor. I mean, Steadfast has taken the position that once we damage any part of the surface estate, it's precluded from cover, the recovery is precluded from coverage by the own rented and occupied exclusion. Because that's what it says. Right, but that's not what the situation was. As I just pointed out, we certainly didn't own the property, the surface estate. The Moes owned the surface estate, the lessors owned the surface estate. We only occupied the two small portions where we operated, and we only rented those two small portions too, because we had been operating on that site, or our predecessors had been operating on those sites for over 50 years. So we did not rent the entire surface estate. Now we may have rented the right to reasonably use the surface estate, but we were not using that part of the surface estate. We were not renting it. We did not have direct primary control over the surface estate outside the half acre portions where we did our work. Now the reason I use the term direct primary control is because it leads into a discussion what the purpose and intent of this owned, rented, and occupied exclusion in this policy is. Now an owned, rented, occupied exclusion has appeared in liability policies for many, many years. And it's interesting to note that it has never been asserted in this context before. It has never been asserted in a Louisiana case where damage occurs on a surface estate that is not being occupied or used by the lessee, the mineral lessee. And the reason for that is, is because Louisiana mineral laws, as I provided, does not give direct primary control of the surface estate to the lessee. And the insurance industry, as best discussed, and we cite this in our brief, in the Insurance Risk Management Institute, which publishes annotated liability policies, discusses this very same owned, rented, and occupied exclusion and what its intent is. And what the intent is, is with the understanding that liability insurance is to provide coverage only for damage to another's property, not the insurance property, some other party's property, third party property. There are some circumstances, such as the lease of a premises, the lease of land, and the surface estate for use by farming, where the insured has direct and primary control over the surface estate. And in those cases, this exclusion applies. If there is not direct primary control over the surface estate, this exclusion does not apply to preclude coverage. And in the case of a Louisiana mineral lessee, with regard to the surface estate that's not occupied for reasonable operations of the policy holder and the lessee, that land, that surface estate is not under the direct primary control of the policy holder. It is under the direct primary control of the landowner, the lessor. Here, there's a separate salt water agreement in addition to the lease. And here, that salt water agreement talks about the lessor reserving all of its rights to do alligator farming and crawfish farming and lease out its own surface estate covered by the lease to various parties for whatever, and that just goes to show that the landowner, the lessor, exercised the direct physical control, direct primary control over the surface estate, which the lessee pioneered did not. And so this exclusion just does not apply. Now, Steadfast has tried to drive this square peg of this own rented and occupied exclusion into the coverage that it provided under the blended pollution endorsement by citing the unpublished Aspen case in this court. I think we did an extensive job of attempting to distinguish, not attempting, of distinguishing the Aspen case in our briefing. In particular, we pointed out very clearly that the exclusionary wording in the Aspen case is vastly different and far more broad than the exclusionary wording that appears in the umbrella policy at issue here. In the Aspen case, the wording talks not only about property excluding from coverage property that is in the occupied, rented, or owned by the policyholder, but also property that is leased by the policyholder. And that is under the policyholder's care, custody, and control. And those are very important distinctions because it is the leased language and the care, custody, and control language that the panel of this court relied on in finding that that exclusion precluded coverage for damage to the property at issue in the Aspen case. Now recall that in the Aspen case, the insured was a company called Dune, and they operated a pipeline on their lease. And the pipeline sprang a leak, and there was about 120 gallons of oil that spilled, and they had to clean it up for a million dollars. They admitted to the district court in that case that they leased the property at issue, and there's a lease provision in the exclusion at issue, and that they cleaned up the property for their own purposes, for the benefit of their own business. They essentially admitted that they were exercising direct primary control over that land at the time the spill occurred. And so the court found- The terminology, lease and rent were both in Aspen? Lease and rent were both in Aspen, yes. But your argument then is that the rent implies more control than just a lease? I'm sorry? What's your primary distinction is that the rental provision implies more control? No, that the rental provision is not- Then in this case? It's distinguishable from lease. The two things have different meanings. They could be synonymous. They're not in this context, in the context of a mineral lease. But more importantly, the fact that the word lease appears in the Aspen exclusion renders that exclusion much more broad. More broad. Than the own rented and property exclusion at issue here. Judge Afric in the district court in Aspen recognized that when he was trying to distinguish the Devon case that Judge Hughes decided over in the Southern District of Texas. Recalled Judge Hughes' case in Devon, Judge Hughes paraphrased the exclusion and it appeared to be exactly the same as the exclusion here, an owned, rented, and occupied exclusion. And Judge Hughes, I think, correctly found that that exclusion did not give the policy holder, the lessee, direct control over the land and therefore the preclusive effect of the exclusion was not effective. Judge Afric, in distinguishing the Devon case in Judge Hughes' decision, said, and I think I'm quoting, that that may all be true, but the exclusion in this case, the Aspen case, is much broader than the owned, rented, and occupied exclusion in the Devon case. And that's exactly true. And if you look at the circuit court decision in Aspen, what the circuit court did was, number one, find that the land was leased and the policy holder admitted it was leased and the exclusion precludes coverage for leased land. So that's easy. And it also found that because the mineral lease at issue in that case gave Dune, the policy holder, the right to occupy the surface estate. That that right to occupy meant that Dune had control over the surface estate and that control gave rise to the preclusionary effect of the exclusion. Now, that analysis is fine as far as it goes. That analysis cannot be made in this case because this case, the exclusion does not contain the care, custody, and control provision or the leased provision that was in the Aspen case. So the Aspen exclusion is very, very distinguishable. The facts of the Aspen case are very distinguishable. In Aspen, as I pointed out, the policy holder admitted that it was cleaning up the land for its own purposes. There were no claims made against Dune in the Aspen case by third parties. There was no third party lawsuit brought for damage to the property like there was here by the Moes, the Rutherfords, the Vaughns, and by virtue of a DNR compliance order that was issued as to pioneer in this case. So it's distinguishable in that way as well. Now, admittedly, the panel there in Aspen found that the mineral lease gave the lessee broad control over the surface estate. And with all due respect to that panel, I think that that overstates what the lessee's interest is, what the lessee's rights are in the surface estate held by a mineral lease. In fact, what the lessee holds is the right to reasonable use of the surface estate necessary for its obligations. And so the only part of the surface estate that a mineral lessee in Louisiana has an interest in is that which it is reasonably using for its operations. And in this case, what Pioneer was reasonably using for its operations was the two half acre sites. Everything outside of that on the 285 acre land was essentially not in its direct primary control, not subject to the preclusive effect of the exclusion. And so we think Aspen is distinguishable. This particular exclusion analyzed in light of its intent as recognized by the insurance industry and as applied to the facts of this case does not preclude coverage for the damage to the surface estate outside the two half acre areas where we were operating. So we would ask that the court reverse that part of the district court's decision. We also ask, on the plug in abandonment case, which we talked about. The district court, in our view, misread the exclusion at issue there. And this is an important point with both of these exclusions. Exclusions under Louisiana law, which is what the district court applied and what we have agreed should apply here, are to be read narrowly and construed in favor of coverage, construed in favor of the insured. These exclusions are written by the insurance companies, and they should be construed in favor of coverage. Any ambiguity, for example, with regard to does rent equal lease? What does rent mean in this case? Any ambiguity- I'm just wondering, how did the district court misread on this point? The district court misread the exclusion at issue there was in the blend, it was not in the blend pollution endorsement, it was in the oil field endorsement, and it basically said that all costs related to controlling the well are excluded from coverage. And it said, a well is no longer out of control when uninterrupted flow stops. And then the P&A here was done after uninterrupted- Is it undisputed, that last point, that the flow had stopped? Well, Steadfast has disputed it, but I believe that the evidence in the record shows that it's undisputed. There's the evidence of an affidavit in the underlying record from one of our contractors saying that that contractor was the P&A contractor. And that they plugged and abandoned the well after the flow had stopped. And as a matter of oil field practice, your honor, I would submit to you that you cannot plug and abandon an oil well that is running out of control, that's just impossible. You have to get it under control before you can get in there to assess the well and then plug and abandon it. But if it's no longer under control, you don't have to do it immediately. It seems to me you incurred all these extra expenses because of the timing. Or am I wrong? Once the well is brought under control, it's essential that it be plugged and abandoned as soon as possible to prevent any future flow to make sure that the well is safe. You knew it couldn't be- That the property is protected from any further damage. You knew it couldn't be put back in service. I'm sorry? You knew that it could not be put back in service? Yes, this particular well, your honor, was a very old well, could not be brought in service. We ask that the court reverse the district court ruling. All right, thank you. Mr. Mercer. Good morning, your honors. Glenn Mercer on behalf of Steadfast Insurance Company. I think the key issue is the owner-renter-occupier exclusion. And it has been found at this point unambiguous by five different judges. Judge Monaldi, Judge Owen, Judge Prater, Judge Afric. Judge Weiner. You don't get into the intent of the parties. As a predicate, you have to find that the exclusion is ambiguous. And we have to remember how these policies were put together. Pioneer is a sophisticated oil company. It had a team of brokers who put together a program for them. They had a policy that covered these damages. The control of well policy they had from Lloyd's of London provided $5 million of coverage for controlling the well and remediating property on which they leased or owned property. That policy paid the $5 million limits. So the program worked as it was supposed to do. The problem is there were only $5 million of coverage and the damage has exceeded that. So now they're attempting to find coverage where it is clearly excluded under the steadfast policy. If you look at the Aspen decision and the provision at issue in that case, that exclusion applied to continuation of property owned, leased, rented, or occupied by an insured. Or property in the care, custody, or control of an insured. So it had an extra clause. It had one clause that provides, that covered a situation where the insured owned, leased, rented, or occupied. A separate clause in which property was in the care, custody, or control. In Aspen, there was no question that the insured had a lease. They rented the property at issue. They had a mineral lease. If you read the Aspen decision, their analysis is predicated on the fact that the insured had a mineral lease of the property at issue. You look at the language. Even if we accept Dune's argument that it's mineral lease does not give it care, custody, or control, that's the separate clause. The language of the lease and established Louisiana law give Dune substantial rights to occupy, care for, take custody, control of the property. Same thing here. The insured, in this case, Pioneer, pursuant to its written lease, had the exclusive right to enter upon land, use the land for exploration, production of oil, gas, sulfur, other minerals, together with the use of the surface of the land for all purposes incident to the exploration of that, including the right to construct, maintain, use roads, pipelines, canals. The Aspen decision keyed on the rights of the insured. It had a lease, a rental agreement. Lease and rental are synonymous. You lease a house, you rent a house. There's no distinction to be made. The definition of rent in the mineral code is not in any way relevant to the interpretation of an insurance policy that does not incorporate the mineral code that is meant to apply to everyday situations. And so our primary contention is this issue has been raised and has been ruled on by this court and by other courts, all of which found it unambiguous. The only case that did not was the district court case in Texas in which the ruling was dicta. It was not disputed that the damages at issue in that case were indeed third party damages. As to the plugging and abandoning of the well, as the court has already pointed out, Pioneer can't have its cake and eat it too there, either it was done as part of controlling the well. And it's excluded, or it was done separately and has nothing to do with the controlling of the well. And the insuring provision, it's a third party policy. Somebody has to sue Pioneer and claim you need to go plug that well. There's been no claim made against them to control the well. No one's claimed that they need to do that. They're required to do it by law. That's a pre-existing obligation. That's an obligation that had nothing to do. It's not property damage arising out of an occurrence. It's a pre-existing obligation that they had regardless of whether or not there was a blowout on this premises. And they did not cite a single case in the entire history of the world where a court has found the obligation to plug a well is covered property damage within the meaning of a policy. So I think, you know, the other issues are really the prevention of damage to third parties is something that they raise as being an issue. And I think the distinction to be made in the steadfast policy is its insuring agreement specifically states that that is not going to be covered. So there's two different exclusions. They contend only one should apply because there's a conflict between them. There's no conflict between them. There's no reason you can't have two separate exclusions. The blended oil pollution endorsement states it modifies the policy and it states which other provisions of the policy are being removed. This exclusion C8 is not listed as being removed. There's no conflict between them. There's no reason why one part of the policy can say A, B, and C are excluded, and another provision can say, oh, D, E, and F are also excluded. There's no prohibition on that. That does not create a conflict between them. And either of them are broad enough to cover, to address the prevention of damage to third parties. The C8 exclusion, the main policy, excludes damage to property you own and or occupy, including prevention of injury to a person or damage to another's property. So the fact that Pioneer built berms, brought in tanks, sucked out all the stuff, well, that wasn't cleaning up the property. That was preventing damage to third party.  You're cleaning up the property. You can't clean up the property if you don't get the stuff off of it. But even if you want to argue it's preventing damage to a third party, unlike the case that are cited by them, our provision specifically addresses it. Similarly, in the blended pollution endorsement, it excludes clean up, removal, containment. That's no different than preventing injury. That's exactly what they did. They built berms. They contained it. They brought in trucks. They removed it. Well, not just injury, didn't it also say prevention of damage to another's property? That's in the main exclusion, C8, including prevention of injury to a person or damage to another's property. I thought that's what you were referring to. Yeah, that's in the main policy, and then the additional exclusion is in the blended pollution endorsement. And it states clean up, removal, containment, detoxification, neutralization existing within the boundaries of any premises. So our main contention again is that the main issue in this case has been addressed by this court. And that decision, you guys can read it as well, it's not better than we can, was keyed on the fact that the insured in that case had a mineral lease. And the same issue was addressed by Judge Afric. The damage claimed by Dune occurred on the physical property that it leased. There was no ruling that it was property in the care, custody, or control, because in that situation they had a lease. You didn't need to rely on care, custody, or control because they had a lease. The court will not search for a deeper meaning within the contract in order to create an ambiguity where none exist. And so I think it's unambiguous, it's been found unambiguous by five different judges at this point in time. They don't dispute they had a mineral lease. And both the Fifth Circuit's decision and Afric's decision said, look, the rights of the landowner are not relevant. The fact that the landowner could do A, B, or C has no relevance to the inquiry. The inquiry is the rights of the insured. Their rights are unambiguous. They had the right to do whatever they needed to do to search for minerals. And this court has already held that sufficient. That falls within an owner-manager occupy exclusion. All right, thank you. Thank you. Repetal. With all due respect, five different judges have not decided that the exclusion at issue in this case, a pure owned, rented, and occupied exclusion is unambiguous when applied to a mineral lease surface estate being operated by a lessee. The Aspen court had a very different exclusion. As Judge Afric said, a much broader exclusion from which it was working. And its decision was indeed based in large part upon the fact that the court found there that the policyholder, the lessee, had the right to occupy the leased premises, even though they weren't occupying it, even though they were in the facts of the case. And that right to occupy gave them control over the leased surface estate. And therefore, that control triggered the control provision of the care, custody, and control clause of the exclusion. It's a very, very different exclusion, a much broader exclusion. It should not be precedential for the decision in this case, where we're looking at a much narrower exclusion as to whether the policyholder, lessee, owned, rented, and occupied the entire surface estate of the lease where the damage occurred. And as I pointed out earlier, there's no question, even steadfast, doesn't contend that that surface estate wasn't owned by the policyholder. Clearly, it was only occupied on the half acre tracks where Pioneer conducted its operations, its reasonable operations. And I would submit to you that under Louisiana Mineral Law, which is manifestly important here, because it tells you what the rights of the policyholder, lessee, are under the lease, that the lessee is only renting from the lessor here that part of the surface estate reasonably necessary to conduct its operations to exploit the minerals. And that part of the surface estate that was reasonably necessary and that was occupied in this case are the two half acre tracks. Now, the right to occupy, which was very important to the panel in the Aspen case, does not come into play here. Exclusions have to be narrowly construed in favor of coverage, narrowly construed in favor of the insured. This exclusion says occupied. It doesn't say anything about the right to occupy. It doesn't trigger the right to occupy. Admittedly, that if Pioneer had wanted to conduct other operations on another part of the lease, they could have done that pursuant to the lease, but they were not doing that historically in this case. They were renting from the landowner the surface estate necessary to reasonably conduct their operations, the two half acre tracks, nothing more. And once again, the Aspen court had a very different factual scenario as well. There was an admission of a lease. There's a lease provision in the exclusion. And there was the admission as well that the insured cleaned up the policy, cleaned up the land for its own purposes. Now, here we have third party suits brought against our policy holder, Pioneer. There's no question regarding the land that was owned by a third party.  Thank you, Your Honor.